

THE ATTORNEY GENERAL

OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

July 9, 1969

John Kinross-Wright, M. D.          Opinion No. M- 431
Commissioner, Department of
Mental Health and Mental            Re: Whether a psychologist
Retardation                              employed by the Richmond
Box S, Capitol Station                   State School who con-
Austin, Texas    78711                   tracted tuberculosis
                                         from a patient is
                                         entitled to the benefits
                                         provided by Article
                                         6822a, V.C.S.

Dear Dr. Kinross-Wright:

          Your recent request for an opinion is quoted as
follows:

          "An employee at the Richmond State
     School, under control and management of
     this Department, has apparently con-
     tracted tuberculosis from a patient to
     which she administered a psychological
     examination, which examination was given
     in an enclosed area and lasted approxi-
     mately two hours.  X-rays made later
     confirmed the person examined to be in-
     fected with tuberculosis.  The employee
     consulted a well-known chest specialist
     in Houston and medication to control
     the tuberculosis has been initiated and
     will have to be continued for at least
     one year.

          "Your opinion is respectfully
     requested as to whether or not those
     appropriations made to the Richmond
     State School described in Section 8 of
     Article V of H. B. No. 5, Acts 60th

- 2145 -

Legislature, First Called Session, 1968, may be used to pay the necessary drugs, medical and laboratory expenses incurred by this employee in combating the illness she has contracted."

We assume for the purposes of this opinion that a request for payment of the expenses described has been or will be made to the Governor and his approval obtained as required by Section 8 of Article V of H. B. No. 5, Acts of the 60th Legislature, First Called Session, 1968 (General Appropriations Bill). This section of the act provides:

"Sec. 8. PAYMENTS FOR INJURIES. Pursuant to Chapter 377, Acts, 1959, Fifty-sixth Legislature, Regular Session (Codified as Article 6822a), appropriations made in this Act for consumable supplies and materials, current and recurring operating expense, general operating expenses, other operating expenses, or general institutional expense, may also be expended for paying necessary drug, medical, hospital and laboratory expenses for the care and treatment of any State employee injured while performing the duties of any hazardous position to which he is assigned by his State employment. For the purposes of this Section, 'hazardous position' shall mean one for which the regular and normal duties inherently involve the risk or peril of bodily injury or harm.

"The expenditure of any appropriation for the purposes authorized by this Section shall have the approval of the Governor, shall be made only to the vendors of necessary drugs, medical, hospital

or laboratory services, and shall not exceed the amounts appropriated for the purposes stipulated in the preceding paragraphs nor result in jeopardizing the financing of the regular functions or services of the respective State agency.

"Where a State employee has received benefits through payments by the State pursuant to this Section, and also has received other liability benefits as a consequence of the same injury, such employee shall pay to the State Treasury all sums received or paid in his behalf as damages, for medical and hospital bills, up to but not in excess of the amounts of any such payments made by the State. No agency of this State who makes payments pursuant to this Section shall present the name of any employee who has failed to comply with this paragraph to the State Comptroller for the issuance of any Treasury warrant payable to such an employee.

"The provisions of this Section shall not apply to any agency of the State authorized to provide workmen's compensation insurance for its employees."

The pre-existing statute authorizing the legislature to make an appropriation of this nature is Article 6822a, V.C.S., which provides as follows:

"Section 1. The Legislature is hereby authorized to appropriate public funds for the purpose of paying for drugs and medical, hospital, laboratory, and funeral expenses of state employees injured or killed while engaged

in performance of a necessary govern-
ment function assigned to the employee,
or where the duties of such employee
require the employee to expose himself
to unavoidable dangers peculiar to the
performance of a necessary governmental
function.

"Sec. 2. Agencies of the state
are hereby authorized to expend appro-
priated funds for the purpose of paying
for drugs and medical, hospital, labora-
tory, and funeral expenses to those
state employees under their jurisdiction
and control only when such employees
are engaged in the activities described
in Section 1 of this Act, and only to
the extent authorized by appropriations
made by the Legislature.

"Sec. 3. The payment of the
expenses provided for in Section 1 of
this Act is authorized to be made in
addition to other prerequisites of
employment now authorized by law.
Acts 1959, 56th Leg., p. 838, ch. 377."

The Legislature has authorized the Richmond
State School funds for, inter alia, "other operating
expense." But before a State employee can be held to
be qualified to receive the benefits of Section 8, Arti-
cle V of House Bill No. 5, he must meet the tests esta-
blished by the Legislature in Section 8, viz. be
"injured while performing the duties of any hazardous
position to which he is assigned by his State employ-
ment." (Emphasis supplied.) While a definition is
furnished by the statute for the term "hazardous position,"
none is furnished for the term "injured."

The distinction between a "disease" and an
"injury" has been the subject of much litigation under
the Workmen's Compensation Act of this State. Since
the Legislature has excluded from the operation of said

section those state agencies authorized to provide
Workmen's Compensation insurance for their employees,
we believe the legislature intended that the term
"injured" be used and defined in the same sense that
it is used in the Workmen's Compensation Act.

Article 8306, Section 20, Vernon's Civil
Statutes, provides as follows:

> "Wherever the terms 'injury' or
> 'personal injury' are used in the
> Workmen's Compensation Law of this
> state, such terms shall be con-
> strued to mean damage or harm to
> the physical structure of the body
> and such diseases or infection as
> naturally result therefrom. . ."

The courts give liberal construction to the
Workmen's Compensation Act, and if a reasonable doubt
exists as to the right of an employee to compensation,
it should be resolved in favor of such right. Bailey
v. American General Insurance Company, 154 Tex. 430,
279 S.W.2d 315 (1955). In the Bailey case, supra, the
Supreme Court defined the terms "physical structure of
the body" and "harm" as used in Article 8306, Section
20, as follows:

> "The phrase 'physical structure of
> the body' as it is used in the sta-
> tute, must refer to the entire body,
> not simply to the skeletal structure
> or to the circulatory system or to
> the digestive system. It refers to
> the whole, to the complex of per-
> fectly integrated and interdependent
> bones, tissues and organs which
> function together. . .the structure
> should be considered that of a
> living person not as a static, inani-
> mate thing.
>
> "The ordinary as well as legal
> connotation of 'harm' is that it is
> of broader import than 'damage.'

> Damage embraces direct physical
> injury to a cell, tissue or organ
> system; 'harm' to the physical
> structure of the body embraces also
> impairment of use or control of
> physical structures, directly caused
> by the accident." (Emphasis supplied.)

The distinction between an accidental injury and occupational disease is that an accidental injury can be traced to a reasonably definite time, place and cause, whereas an occupational disease is of slow and gradual development, and the time, place and cause of it are not susceptible of definite ascertainment. Barron vs. Texas Employers' Ins. Ass'n., 36 S.W.2d 464 (Tex.Comm.App. 1931). See also Texas Employers' Ins. Ass'n. v. McKay, 146 Tex. 569, 210 S.W.2d 147 (1948); Texas Employers' Insurance Association v. Bradford, 381 S.W.2d 234 (Tex.Civ.App. 1964, error ref. n.r.e.); Solomon v. Massachusetts Bonding and Insurance Co., 347 S.W.2d 17 (Tex.Civ.App. 1961, error ref.).

In the case of Barron v. Texas Employers' Ins. Ass'n., supra, the employee contracted tuberculosis as the result of inhaling gas from an oil well. He was able to point with reasonable certainty to the time, place and cause of the tuberculosis. The court held that the employee had suffered an "injury" within the meaning of the word as used in the Workmen's Compensation Act, in the following language:

> "A disease contracted as the
> direct result of unusual condi-
> tions connected with the work,
> and not as an ordinary or reason-
> ably to be anticipated result of
> pursuing the same should be con-
> sidered as an accidental injury."

From the cases cited we conclude that the State employee in question was "injured" as that term is used in the statute in question.

Dr. Kinross-Wright, page 7 (M-431)

Whether the State employee was injured while performing the duties of a "hazardous position" is controlled by the definition supplied in Section 8, Article V, House Bill No. 5, quoted as follows:

> "For the purposes of this Section, 'hazardous position' shall mean one for which the regular and normal duties inherently involve the risk or peril of bodily harm."

The patients of Richmond State School are impaired mentally, and often physically, or they would not qualify for admission to the school. In our opinion this State employee, required in the performance of her normal duty to expose herself at close quarters to the infirmities, mental and physical, of these patients, was in a position where her duties inherently involved the risk or peril of bodily injury or harm, and was occupying a "hazardous position" as defined by the statute. That the injury suffered, tuberculosis, was not one of the particular perils expected does not in our opinion bar this employee's qualification under the definition contained in Section 8.

If in fact the employee's tuberculosis was, in reasonable medical probability, caused by her exposure to the tubercular patient on the occasion in question, we conclude that the State employee in question does qualify for the benefits authorized by Section 8 of Article V, House Bill No. 5, 60th Legislature, First Called Session, 1968.

## S U M M A R Y

An employee of Richmond State School contracting tuberculosis as the result of conducting a psychological examination of a tubercular patient may have necessary drug, medical, hospital or laboratory expenses paid from the appropriations made to Richmond

Dr. Kinross-Wright, page 8 (M-431)

State School for "other operating expense"
pursuant to Article 6822a, Vernon's Civil
Statutes, and Section 8, of Article V,
House Bill No. 5, Acts of the 60th Legisla-
ture, First Called Session, 1968.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Tom Neely
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
George Kelton, Co-Chairman
Terry Goodman
Robert C. Crouch
Ralph Rash
Malcolm Quick

Hawthorne Phillips
Executive Assistant